**STATE OF VERMONT DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, Plaintiff-Appellee,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and Otis Bowen, M.D., Secretary \*, in his official capacity, his agents and assigns, Defendants-Appellants.**

No. 970, Docket 85–6320.

United States Court of Appeals, Second Circuit.

Argued March 20, 1986.

Decided Aug. 12, 1986.

---

\* Pursuant to Fed.R.App.P. 43(c)(1), Otis Bowen, M.D. has been substituted as a defendant-appellant.

Steven B. McLeod, Sp. Asst. Atty. Gen.,
Barre, Vt. (Michael O. Duane, Asst. Atty.
Gen., Vermont Dept. of Social and Rehabili-

tation Services, of counsel), for plaintiff-appellee.

Christopher B. Baril, Asst. U.S. Atty., Rutland, Vt. (Joyce Elise McCourt, Asst. Regional Atty., Dept. of HHS, Boston, Mass., George W.F. Cook, U.S. Atty., D. Vt., Richard K. Willard, Asst. U.S. Atty. Gen., of counsel), for defendants-appellants.

Carol R. Golubock, Washington, D.C. (Marion Wright Edelman, Children's Defense Fund, Washington, D.C., Nancy Flickinger, Patrick O'Keefe, Robert P. Parker, Peter K. Rofes and Daniel M. Singer, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., of counsel), for amicus curiae Children's Defense Fund.

Before KAUFMAN, TIMBERS and MINER, Circuit Judges.

MINER, Circuit Judge:

The Secretary of the United States Department of Health and Human Services ("Secretary") appeals from a judgment of the United States District Court for the District of Vermont (Billings, J.) reversing a decision of the Department of Health and Human Services Grant Appeals Board ("GAB") which held the state of Vermont ineligible for certain previously distributed federal foster care funds. For the reasons set forth below, we reverse.

## I. BACKGROUND

### A. *The Federal Statutory Scheme*

The instant appeal arises out of conflicting state and federal approaches to the problem of foster care. In response to demonstrated inadequacies in our nation's system of foster care, *see generally* 125 Cong.Rec. S29938 (daily ed. Oct. 29, 1979) (remarks of Sen. Cranston), Congress enacted Pub.L. No. 96-272, the Adoption Assistance and Child Welfare Act (the "Act"), signed into law by President Carter on June 17, 1980. The Act amended Title IV of the Social Security Act and sought to provide the states with fiscal incentives to encourage a more active and systematic monitoring of children in the foster care system. In particular, the Act amended the Title IV–B program, 42 U.S.C. §§ 620–628, which provides funds to the states for the improvement of child welfare services, and created the Title IV–E program, 42 U.S.C. §§ 670–676, which provides reimbursement to the states for foster care maintenance and adoption assistance payments made by the states on behalf of eligible children.

In amending Title IV–B, Congress authorized annual appropriations of $266 million "[f]or the purpose of ... establishing, extending, and strengthening child welfare services...." 42 U.S.C. § 620(a). Of this $266 million, each state would receive a proportionate share of the initial $141 million appropriation. For a state to receive its share of any funds appropriated in excess of $141 million, the Act provides that the state must certify, *inter alia*, that it:

> (2) has implemented and is operating to the satisfaction of the Secretary—
>
> * * * * * *
>
> (B) a case review system (as defined in section 675(5) of this title) for each child receiving foster care under the supervision of the State....

42 U.S.C. § 627(a). Section 675(5) of the Act defines "case review system" as a procedure for assuring that

> (B) the status of each child is reviewed periodically but no less frequently than once every six months by either a court or by administrative review (as defined in paragraph (6)) in order to determine the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care, and to project a likely date by which the child may be returned to the home or place for adoption or legal guardianship, and

(C) with respect to each such child, procedural safeguards will be applied, among other things, to assure each child in foster care under the supervision of the State of a dispositional hearing to be held, in a family or juvenile court or another court (including a tribal court) of competent jurisdiction, or by an administrative body appointed or approved by the court, no later than eighteen months after the original placement (and periodically thereafter during the continuation of foster care), which hearing shall determine the future status of the child (including, but not limited to, whether the child should be returned to the parent, should be continued in foster care for a specified period, should be placed for adoption, or should (because of the child's special needs or circumstances) be continued in foster care on a permanent or long-term basis); and procedural safeguards shall also be applied with respect to parental rights pertaining to the removal of the child from the home of his parents, to a change in the child's placement, and to any determination affecting visitation privileges of parents.

42 U.S.C. § 675(5).

As is evident from the statute, and more particularly, its legislative history, *see, e.g.,* 125 Cong.Rec. S22685 (daily ed. Aug. 3, 1979) (remarks of Sen. Cranston), Congress afforded the states considerable flexibility to develop administrative procedures compatible with their own unique foster care circumstances. Despite this general flexibility, however, Congress insisted that any state requesting excess funds satisfy certain minimum requirements. First, within six months after a child's placement in foster care, and at least once every six months thereafter for the duration of his or her stay, the Act mandates that a status review be conducted, either by a state court or by an impartial state administrative body. 42 U.S.C. § 675(5)(B). Second, with respect to children still in foster care after eighteen months, the Act requires that a court or court appointed body hold periodic dispositional hearings to determine the child's future status. *Id.* § 675(5)(C).

## B. *Vermont's Statutory Scheme*

Prior to the Act's passage, Vermont's statutory foster care procedures provided that, at the request of certain persons or agencies, the state's attorney "shall prepare and file a petition [with the juvenile court] alleging that a child is in need of care or supervision." Vt.Stat.Ann. tit. 33, § 645 (1981). Thereafter, the juvenile court was required to hold a hearing and issue an order containing its findings with respect to the allegations in the petition. If the court found that the child was in need of care or supervision, the court was required to continue the hearing for the purpose of "considering the disposition to be made in the proceedings." *Id.* § 654(b). The court was empowered to place the child in foster care and terminate the parental rights of the child's parents and transfer those rights to an individual, agency, or institution. *Id.* § 656(a).

When a court ordered placement in foster care, Vermont law required that the court's dispositional order be reviewed "two years from the date [it was] entered and each two years thereafter." *Id.* § 658(a). That review would include a juvenile court hearing only if a party to the initial dispositional hearing so requested, or if the court in its own discretion so ordered. In those cases where the juvenile court's dispositional order terminated parental rights, Vermont law did not require that the disposition of the child's situation be reviewed.

After passage of the federal Act, the Vermont legislature amended the state's foster care procedures in order to render the state eligible to receive the additional Title IV–B federal funds. The most significant changes included shortening the time for review of the juvenile court's dispositional order placing a child in foster care from two years to eighteen months, and requiring that review of the dispositional order include a hearing by the juvenile court or by an administrative body appointed or approved by the court. Vt.Stat.Ann. tit. 33, § 658 (1985 Supp.). The amended

procedures did not, however, require any dispositional review for children whose parents had had their parental rights terminated ("TPR" children), even if such a child remained in foster care after termination. Vermont conceded in the district court that a dispositional hearing for a TPR child who remains in foster care is undertaken (after the initial hearing) only if the juvenile court, in its discretion, orders or conducts such a hearing, or if adoption proceedings are initiated in the probate court with respect to that child.

### C. Proceedings Below

In fiscal year 1981, the first year for which the Act was applicable, states were instructed to declare their eligibility for the additional Title IV–B funds by a statement of self-certification. Vermont submitted its self-certification on July 29, 1981, attesting to the fact that it was in compliance with the Act's procedures. That self-certification was accepted by the Secretary's agent, the Acting Commissioner of the Administration for Children, Youth and Families ("ACYF"). Accordingly, for fiscal year 1981, Vermont received $346,872 in additional Title IV–B funds.

In April of 1982, all states, including Vermont, were informed that their self-certifications would be subject to a verification review by ACYF to assure compliance with the Act. During the course of its review, ACYF discovered that Vermont did not have procedures to assure periodic dispositional hearings for TPR children and in fact had not been providing such hearings. On August 12, 1983, ACYF's Acting Commissioner notified Vermont that it had failed to satisfy the requirements of the Act for fiscal year 1981 in three respects. The Commissioner's notice stated:

> [S]ince Vermont did not provide dispositional hearings for TPR children in Fiscal Year 1981, the State failed to meet the requirements of section 427 [42 U.S.C. § 627].

In addition to the failure to provide dispositional hearings for TPR children,

Vermont failed to meet the requirements of section 427 on two other grounds. . . . In Fiscal Year 1981, Vermont law stated that "every order transferring legal custody or guardianship over the person shall be reviewed *two years from the date entered*. . . ." (Emphasis added.) Vt.Stat.Ann. tit. 33, § 658(a) (1981). Thus, contrary to the requirements of section 475(5)(C), State law did not require dispositional hearings within 18 months of each child's original placement.

In Fiscal Year 1981, State law provided that any person to whom legal custody or guardianship has been transferred must file a notice of biennial review with the court before whom [sic] the proceeding was held, the State's attorney and all parties to the proceeding. Vermont law also stated that "(w)ithin 20 days of such notice, any such party may file a request for a hearing with the court, or the court on its own motion may order a hearing. . . . *In the event that no such hearing is requested or ordered, an order shall be deemed reviewed* . . . ." (Emphasis added.) Vt.Stat.Ann. tit. 33, § 658(c) (1981). The State law thus did not make dispositional hearings mandatory. Consequently, Vermont law did not meet the requirements of section 475(5)(C) and the State failed to comply with section 427.

On August 23, 1983, Vermont filed an appeal with GAB, which upheld the Commissioner's determination. GAB, however, addressed only Vermont's failure to provide periodic dispositional hearings to TPR children; it specifically declined to reach the two additional issues discussed in the ACYF Commissioner's decision. In October of 1984, Vermont petitioned for review of GAB's decision in the district court. Following cross-motions for summary judgment, Judge Billings granted Vermont's motion and denied that of the Secretary, reasoning that Vermont law, as interpreted by the state itself, did provide TPR children with appropriate dispositional hearings. In

reversing GAB's decision, Judge Billings did not confine himself to the sole issue ruled upon by GAB; instead, he discussed and rejected the other two grounds for ineligibility cited by the ACYF Commissioner but not passed upon by GAB. From that decision, the Secretary now appeals. We reverse.

## II. DISCUSSION

The threshold question for our determination concerns the applicable standard of review. Before the district court, the parties agreed that GAB's decision could only be set aside if it was determined to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In light of intervening Supreme Court decisions, *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985); *Bennett v. Kentucky Department of Education*, 470 U.S. 656, 105 S.Ct. 1544, 84 L.Ed.2d 590 (1985), Judge Billings suggested that the standard applicable to a review of compliance with a restrictive grant program was the less deferential substantial evidence test. The issue was not firmly decided, however, since Judge Billings concluded that GAB's decision could not withstand either standard. Assuming, without deciding, that the substantial evidence standard governs GAB's decision, we nonetheless conclude that the decision was properly supported and therefore must be reinstated.

▮ In rejecting GAB's determination that Vermont "failed to provide procedures for assuring periodic dispositional hearings for TPR children," Judge Billings found that "the Secretary relied not upon her agency's interpretation of an applicable federal statute, but upon her agency's interpretation of Vermont statutes and procedures." *State of Vermont Department of Social and Rehabilitation Services v. United States Department of Health and Human Services*, No. 84–325 slip op. at 13 (D.Vt. Aug. 28, 1985). According to Judge Billings, these state procedures "satisfied the guidelines of Section 675." *Id.* at 14. Moreover, Judge Billings was unable to "discern any way that the decision of the Secretary comported with the dictates of the federal statute[,]" *id.*, and concluded that the decision was without justification. We disagree. In our view, the district court's reliance on Vermont's statutory scheme was erroneous; section 658(b) of the Vermont statute simply does not apply to TPR children, and therefore falls short of the federal mandate that *every* child in foster care receive a periodic dispositional hearing.

On appeal, Vermont maintains that its 1981 statutory foster care procedures comply with the federal Act's dispositional hearing requirement in three ways. As discussed below, we find all of its arguments unpersuasive.

First, Vermont contends that its statute, Vt.Stat.Ann. tit. 33, § 658, satisfies the federal requirement that dispositional hearings be held periodically for all foster care children. That section provides:

(a) Unless otherwise specified therein an order under the authority of this chapter transferring legal custody, or guardianship over the person or residual parental rights and responsibilities of a child to an individual, agency, or institution shall be for an indeterminate period and provided further that, every order transferring legal custody or guardianship over the person shall be reviewed two years from the date entered and each two years thereafter. In no event shall any such order remain in force or effect beyond a person's twenty-first birthday.

(b) Any person to whom legal custody or guardianship over the person has been transferred shall thereafter file a notice of biennial review with the court before whom [sic] such proceeding was held, the state's attorney having jurisdiction, and all parties to the proceeding, and, in addition, shall file with such court and such state's attorney a report and recommendation....

(c) Within 20 days of such notice, any such party may file a request for a hearing with the court, or the court on its own motion may order a hearing. Within 30 days after any such request or order, a hearing shall be held for the purpose of considering the review of the order of disposition, which hearing shall be held in all respects as a hearing on a petition under this chapter, except that in such a hearing, all evidence helpful in determining the questions presented, including oral and written reports, may be admitted and relied upon to the extent of its probative value, even though not competent in a hearing on a petition. In the event that no such hearing is requested or ordered, an order shall be deemed reviewed within the meaning of subsection (a), and shall remain in force for a period of two years after the expiration of the time within which a hearing could have been requested, without the entry of an additional order.

*Id.* § 658(a)–(c) (1981). The central failing in this statutory provision is found in Vermont's concession in the district court that section 658 hearings are merely discretionary in the case of TPR children. The language of section 675(5)(C) of the federal Act, however, is clear in extending to *"each* child in foster care under the supervision of the State" the protection of periodic dispositional hearings. 42 U.S.C. § 675(5)(C) (emphasis added). Moreover, the legislative history amply demonstrates that section 675(5)(C) requires dispositional hearings for *all* foster care children. The central purpose of the legislation was to remove children from long-term foster care, either by reuniting them with their parents or by placing them with adoptive parents or in some other permanent arrangement. In introducing the Senate version of the bill in 1979, Senator Cranston made clear the need for dispositional hearings to be held at specific intervals after a child's placement:

[T]he provision for a dispositional hearing after a set period of time is, I believe, of critical importance. One of the prime weaknesses of our existing fostercare system is that, once a child enters the system and remains in it for even a few months, the child is likely to become "lost" in the system. Yearly judicial reviews of the child's placement too often become perfunctory exercises with little or no focus upon the difficult question of what the child's future placement should be. Foster care, with few exceptions, should be a temporary placement; unfortunately, under our existing system, temporary foster care becomes a permanent solution for far too many children. This provision requiring a dispositional hearing after a child has been in foster care for a specific period of time should assist States in making the difficult, but critical, decisions regarding a foster child's long-term placement.

125 Cong.Rec. S22684 (daily ed. Aug. 3, 1979); *see also* H.Rep. No. 136, 96th Cong. 1st sess. 50 (1979) (remarks of Rep. Ullman).

Contrary to Vermont's assertion, nothing in the Act excludes TPR children in foster care from the requirement of periodic dispositional hearings. Indeed, this was the specific conclusion of an American Bar Association study:

Children who are still in foster care following termination of parental rights proceedings or following voluntary surrender of parental rights are also covered by the dispositional hearing requirement [of the Act]. Until they are actually placed for adoption or guardianship, they are still in state supervised foster care and, thus are entitled to a dispositional hearing under the explicit language of the act. Further, as a practical matter court involvement may be necessary to insure [sic] that a plan is being implemented—for example, that adoptive parents are being sought.

American Bar Association, *Comparative Study of State Case Review System Phase II: Dispositional Hearings* (1984), volume 3, at 2–45.

■ Judge Billings acknowledged that no dispositional hearing is held after the termination of parental rights, but con-

sidered that fact of no moment, noting that "[i]t comports with neither the federal statute nor common sense to require an additional initial dispositional hearing." Slip op. at 16. Apparently, Judge Billings based this conclusion on his view that a termination of parental rights was in fact a "disposition" after which no further hearings would be necessary. That finding, however, misperceives the very purpose of the Act, *viz.*, to assure all children periodic hearings until a *final* disposition is effected. Since the mere termination of parental rights does not serve to remove a child from the foster care system, Judge Billings erred in concluding that TPR children required no further dispositional hearings.

■ Neither are we persuaded by Vermont's contention that its state adoption procedures, which impose a requirement of a probate court hearing prior to adoption approvals, constitute dispositional hearings that satisfy the requirements of section 675(5)(C). Significantly, probate court intervention does not occur unless and until adoption proceedings have been commenced. Clearly, TPR children who are not fortunate enough to be considered for adoption never will receive such a hearing. And, as Vermont concedes, if an adoption plan fails to materialize or progress, no judicial hearing will be held.

■ In addition, it is clear to us that, contrary to Vermont's assertion, the six-month case reviews required by section 675(5)(B) of the Act do not, of their own accord, satisfy the more stringent dispositional hearing requirement of section 675(5)(C). Even the most cursory comparison reveals that the requirements of section 675(5)(C) are far more demanding than those of the six-month case reviews contemplated by section 675(5)(B). For example, there is no requirement that the sec-

tion 675(5)(B) review be held before a court or court-approved body. Moreover, the six-month review is designated merely to "project a likely date" by which a permanent arrangement will be made, while the section 675(5)(C) hearing is held for the express purpose of determining the future status of the child. Finally, and perhaps most important, section 675(5)(C) mandates the application of "procedural safeguards," in order to protect a child's interest. No similar requirement is to be found in section 675(5)(B). There simply can be no question that the section 675(5)(C) hearing imposes an additional level of review, beyond that provided in section 675(5)(B), aimed at pressing a foster child's case to a permanent resolution.

■ We likewise reject Vermont's contention that a decision by the juvenile court to refrain from holding discretionary 659 hearings for a TPR child pursuant to Vt. Stat.Ann. tit. 33, § 659 (1981)[1] can reasonably be construed to amount to tacit approval of the results of the administrative reviews. GAB properly rejected this argument, finding that such a theory of post-hoc approval did not fulfill the statutory requirement for a dispositional hearing "'in a family or juvenile court or another court ... of competent jurisdiction, or by an administrative body appointed or approved by the court ...' since the State presented no evidence of any appointment or approval by the juvenile court authorizing the State to conduct dispositional hearings." GAB decision at 6 (quoting 42 U.S.C. § 675(5)(C)). Moreover, as GAB reasoned,

> [T]here is no indication in the record that the juvenile court judge was required to make, or even as a matter of practice made, any formal determination not to continue review hearings for a TPR child. Such a determination, depending

---

1. That section provides, in pertinent part:
   (a) An order of the court may be set aside by a subsequent order of this court or, upon appeal from a denial thereof by that court, by a court upon appeal therefrom, when it appears that the initial order was obtained by fraud or mistake sufficient therefor in a civil action, or that the court lacked jurisdiction over a necessary party or of the subject mat-

ter, or that newly discovered evidence so requires. An order of the court may also be amended, modified, set aside or terminated by that court at any time upon petition therefor by a party or on its own motion on the ground that changed circumstances so require in the best interests of the child.
Vt.Stat.Ann. tit. 33 § 659(a) (1981).

upon its content, might arguably be regarded as an appointment of the State to hold dispositional hearings. (However, judicial approval simply of the results of the State's six-month administrative reviews would not be sufficient since section 475(5)(C) [42 U.S.C. § 675(5)(C)] requires approval of an "administrative body" to conduct dispositional hearings.) We see no basis for implying merely from the absence of further review by the juvenile court judicial approval of the State to conduct dispositional hearings.

*Id.*

In short, Vermont has failed to comply with the stringent requirements of section 675(5)(C). GAB therefore was correct in its decision finding Vermont ineligible for the 1981 Title IV–B funds and the district court erred in reversing that determination.

### III. CONCLUSION

The judgment appealed from is reversed and the matter is remanded to the district court with instructions to enter an order affirming GAB's decision.[2]

**2.** In light of this disposition, it is unnecessary for us to address the additional argument advanced by the Secretary that the district court improperly decided issues which were not passed upon by GAB. Nor need we reach the contention of *amicus curiae* that the district court erred in finding that the Act did not require "face-to-face" hearings.