■ In the Matter of GEORGE L. et al., Individually and as Parents and Guardians of MICHAEL L., an Infant, Appellants, v COMMISSIONER OF THE FULTON COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents. (And Two Other Related Proceedings.) [599 NYS2d 319] —Weiss, P. J. Appeal from that part of an order of the Family Court of Fulton County (Jung, J.), entered April 9, 1992, which denied petitioners' application, in a proceeding pursuant to Family Court Act article 6, for custody of the biological sister of Michael L.

Michael L., born in January 1986, was placed in foster care by the Montgomery County Department of Social Services (hereinafter MCDSS). After Michael's natural parents had surrendered their parental rights, he was adopted by petitioners on or about July 7, 1990. In August 1987, Elizabeth (Michael's biological sister) was born, and as the result of a Family Court Act article 10 proceeding in Fulton County Family Court, was taken into custody by the Fulton County Department of Social Services (hereinafter FCDSS) on October 18, 1989 and placed in foster care with Robert M. and Aurelia M. (hereinafter collectively referred to as the foster parents).

FCDSS continued efforts to reunite Elizabeth with her biological mother (see, Social Services Law § 384-b [1] [a] [iii]) notwithstanding her unacceptable lifestyle. MCDSS declined an offer from FCDSS to transfer Elizabeth into their "system" for placement with Michael (see, 18 NYCRR 431.10 [a]), and both agencies determined that visitation between the siblings was inadvisable. Neither agency contacted petitioners to ascertain if they qualified as foster parents for Elizabeth or wished visitation (see, 18 NYCRR 428.6 [b] [6]).

Elizabeth's biological mother surrendered her parental rights on January 23, 1991 and the rights of her natural father were terminated on June 13, 1991. On June 26, 1991, petitioners commenced this proceeding in Fulton County for custody of or visitation rights with Elizabeth. A petition for custody by her paternal grandfather was dismissed for failure to prosecute. In September 1991 the foster parents commenced a related proceeding seeking custody of Elizabeth. Following a fact-finding hearing on the petitions by petitioners and by the foster parents in November 1991, Family Court found that although contact with petitioners should have been made when Elizabeth was initially taken into foster care, it would be detrimental and not in her best interest to move her to any other home, including that of petitioners, and awarded custody to the foster parents with visitation between Elizabeth

and Michael to continue. The court further ordered the foster parents to promptly proceed with an adoption petition. Petitioners appeal.

A final order of adoption of Elizabeth was granted to the foster parents on May 4, 1992. Petitioners argue that this order should be vacated pursuant to Domestic Relations Law § 114 because FCDSS failed to comply with statutes and regulations and place the siblings together. They argue that the actions of FCDSS amounted to wrongful conduct if not outright fraud. The foster parents contend that the custody controversy has become moot because neither an appeal from, nor stay of, the adoption order was sought by petitioners. We do not agree with petitioners that the dispositive issue in this appeal is whether the alleged failure of MCDSS and FCDSS to notify petitioners of Elizabeth's status and the failure to place the siblings together equated to fraud or sufficient cause to justify vacatur of the adoption. Nor do we decide this appeal on the issue of mootness.

The standard to be applied in an adoption proceeding is the best interest of the child (Domestic Relations Law §§ 114, 116; *Matter of Donald U.,* 105 AD2d 875, *lv dismissed* 64 NY2d 603; *cf., Matter of Williams v Williams,* 188 AD2d 906, 907; *Matter of McCauliffe v Peace,* 176 AD2d 382, 383). While adoption proceedings have been dismissed because of overt fraud and misrepresentation practiced upon the court *(Matter of Baby Girl S.,* 141 Misc 2d 905, *affd* 150 AD2d 993, *affd sub nom. Matter of Raquel Marie X.,* 76 NY2d 387, *cert denied* 498 US 984), as well as for failure to disclose to the court in an open and fair manner certain material facts relating to the history and previous custody of the child *(Matter of Lord,* 28 AD2d 1203), the unassailable and overriding consideration in any adoption proceeding remains the best interest of the child (Domestic Relations Law §§ 114, 116; *see, Matter of Baby Girl W.,* 151 AD2d 968, *lv denied* 74 NY2d 613). The courts have not demanded perfection in adoptive parents. This Court has held that even an unacceptable record of misconduct by adoptive parents may be mitigated by evidence that the proposed adoptive child is "healthy and happy and considers petitioners to be his parents, and that, in the interest of stability, the child should remain with petitioners, who have been caring for him continuously for over five years" *(Matter of Donald U.,* 105 AD2d 875, 876, *supra).*

Although petitioners contend that they are equivalent to a biological family and are entitled to deference, we believe Family Court correctly found that Elizabeth's prolonged sepa-

ration from Michael and bonding with her foster parents, who are the only parents she has known, are sufficient extraordinary circumstances which required reliance upon the "best interest" rule *(see, Matter of Michael B.,* 80 NY2d 299, 313-314; *see also, Matter of D. Children,* 177 AD2d 393, 394, *appeal dismissed, lv dismissed* 79 NY2d 911). In his testimony, Michael Heaney, petitioners' expert psychologist, opined that Elizabeth should live with Michael and would not be adversely affected by the move. David Nevin, a psychologist called by the foster parents, concluded the opposite, opining that Elizabeth had bonded with the foster parents, not Michael, and that a forced separation from the foster parents would be traumatic with extensive detrimental and serious repercussions. Family Court ordered an evaluation by Patrick Cavanaugh, a psychologist with significant expertise in child custody cases, who concluded that separation from the foster parents would be traumatic, detrimental, painful and present some degree of risk to her which could result in considerable regression in her maturity, severe temper tantrums, bed-wetting, nightmares and unmanageability. In its decision, the court assigned "great weight" to the testimony of Cavanaugh, "significant weight" to the testimony of Nevin and "little weight" to that of Heaney.

Credibility determinations are best left to Family Court *(see, Matter of Baby Boy B.,* 163 AD2d 673, 674, *lv denied* 76 NY2d 710) and its findings are traditionally accorded great deference *(Matter of Williams v Williams, supra,* at 907; *Matter of McCauliffe v Peace, supra,* at 383; *Matter of Van Hoesen v Van Hoesen,* 186 AD2d 903, 904). The psychological trauma of removal can be grave enough to threaten the destruction of a child *(Matter of Bennett v Jeffreys,* 40 NY2d 543, 550). While petitioners present a sympathetic case, we find the decision by Family Court to be fully supported by the record and decline to disturb it.

Levine, Mercure, Mahoney and Casey, JJ., concur. Ordered that the order is affirmed, without costs.