George T. WHALEN and Elizabeth M. Whalen, individually and as parents and legal guardians of Michael W. Whalen, an infant, Plaintiffs,

v.

The COUNTY OF FULTON; The Fulton County Department of Social Services; Jeanne D. Johannes, Individually and in her Official Capacity; John Rogers, Individually and in his Official Capacity; Malinda Argotsinger, Individually and in her Official Capacity; Karen Glover, Individually and in her Official Capacity; Judith VanHeusen, Individually and in her Official Capacity; The County of Montgomery, The Montgomery County Department of Social Services, Robert L. Reidy, Individually and in his Official Capacity; Molly Johnson, Individually and in her Official Capacity; Cynthia Hallam, Individually and in her Official Capacity, Defendants.

No. 92–CV–1338 (FJS).

United States District Court,
N.D. New York.

Sept. 26, 1996.

Gleason, Dunn, Walsh, & O'Shea, Albany, New York (of counsel, Brendan O'Shea), for plaintiffs.

Horigan, Horigan, Penncock & Lombardo, P.C., Amsterdam, New York (of counsel, Carrie McLoughlin Noll), for Fulton County Defendants.

Maynard, O'Conner, Smith, Catalinotto, & D'Agostino, Albany, New York (of counsel, Christopher K.H. Dressler), for Montgomery County Defendants.

## DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging a violation of their rights under the United States Constitution. Specifically, the plaintiffs allege that the acts and omissions of the Montgomery and Fulton County Departments of Social Services and several individual social workers deprived the plaintiffs of their: (1) First Amendment right to freedom of intimate association, (2) Fourteenth Amendment substantive and procedural due process rights, and their (3) constitutional right of access to the courts. The plaintiffs also claim the same acts by the defendants constitute common law fraud, intentional interference with custody and visitation, negligent interference with custody and visitation, intentional infliction of emotional distress, and negligent infliction of emotional distress, under state law.

Presently before the court are two motions for summary judgment brought by the Montgomery and Fulton County defendants, who are represented separately in this action. Defendants, Fulton County, Jeanne D. Johannes, John Rogers, Malinda Argotsinger, Karen Glover, and Judith VanHeusen, move for summary judgment for failure to state a claim upon which relief can be granted. Defendants, Montgomery County, Robert L. Reidy, Molly Johnson, and Cynthia Hallam, move for summary judgment for failure to state a claim, and in the alternative under "qualified immunity."[1]

### Background

This case arises out of claims made by the plaintiffs, George and Elizabeth Whalen, on behalf of themselves and their infant adopted son Michael, concerning their alleged rights with respect to Michael's biological sister, Elizabeth Waite.

### Michael

Michael Whalen was born in January of 1986 in Montgomery County to Sherry and Michael V., his biological parents. In September of 1986, Michael's biological parents placed him in the care of Montgomery County Department of Social Services ("DSS"), who subsequently placed him in foster care. Shortly thereafter, Mr. and Mrs V. moved from Montgomery County to Fulton County. In January of 1989, Mr. and Mrs. V. voluntarily surrendered their parental rights to Michael to the care and custody of the Montgomery DSS. In April of 1989, The Montgomery County DSS placed Michael for pre-adoption with the Whalens, who resided in Orange County. The adoption was finalized in June of 1990. Throughout the adoption process, the Whalens expressed an interest in adopting Michael's biological sister Elizabeth should she become available for adoption.

---

1. Although defendants move for summary judgment for failure to state a claim, a defense generally raised in the context of a motion to dismiss, both parties submitted matters outside the pleadings in support of their motions which were not excluded by the court. Therefore, the Court will consider the defendants' motions as motions for summary judgment on the merits under Federal Rule 56(c).

*Elizabeth*

Elizabeth Waite was born in June of 1987 in Fulton County, also to Sherry and Michael V. In October of 1989, she was removed from her biological mother's home and taken into custody by the Fulton County Department of Social Services ("DSS").[2] From October 1989 to January 1991, Elizabeth was placed in temporary foster care with the Waites, locally in Fulton County, with the intent of returning her to her biological mother.

Elizabeth Waite's biological mother voluntarily surrendered her parental rights to Elizabeth in January 1991. In June of 1991, Elizabeth's biological father surrendered his parental rights. That same month, the Whalens filed a petition with the Fulton County Family Court requesting that they be granted custody of Elizabeth. In September the Waites filed a petition requesting custody of Elizabeth. Thereafter, in November of 1991, the Fulton County Family Court conducted a custody hearing, after which it granted temporary custody of Elizabeth to the Waites, and awarded visitation rights to Michael.

On April 8, 1992, the Family Court issued an order granting permanent custody to the Waites, finding it to be in Elizabeth's best interests. An adoption petition was then filed by the Waites, and a final order granting the petition was entered in May of 1992. The Whalens appealed the order arguing that Fulton County DSS failed to comply with applicable statutes and regulations by not placing the siblings together. The Appellate Division, Third Department, affirmed the Family Court's decision finding that the Family Court correctly applied the "best interests" standard in reaching its decision. *See Matter of George L. v. Comm'r of Fulton County Dep't of Social Servs.*, 194 A.D.2d 955, 599 N.Y.S.2d 319, 320 (3d Dep't 1993).

In October of 1992, while their appeal to the N.Y.S.A.D. was pending, plaintiffs initiated this action. Thereafter, defendants moved for partial summary judgment on the plaintiffs' § 1983 claims on the grounds of qualified immunity. In a motion decision on March 25, 1993, this Court denied defendants' motions without prejudice pending further discovery.[3]

Further discovery has now taken place and defendants have moved for summary judgment with respect to all claims on the basis that they fail to state a claim upon which relief can be granted.[4]

**Discussion**

**A. Summary Judgment**

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 466, 112 S.Ct. 2072, 2082, 119 L.Ed.2d 265 (1992); *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993). A genuine issue of material fact is one that could be decided in favor of either party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To survive the motion for summary judgment the non-movant must do more than present evidence that is merely colorable, conclusory, or speculative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The non-movant must demonstrate that there are issues of fact that must be decided by a fact finder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). The Court will first address the plaintiffs' § 1983 claims.

In order to state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege (1) that the challenged conduct was attributable

---

2. Up until January 1989, Michael regularly visited Elizabeth, after which visitations ceased.

3. On appeal, the Second Circuit affirmed the decision of this Court finding that the decision was not reviewable under the collateral order doctrine. *Whalen v. County of Fulton,* 19 F.3d 828, 830 (2d Cir.1994).

4. Montgomery County has also moved in the alternative for summary judgment under the doctrine of qualified immunity.

at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995) *quoting Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993). In this case, the plaintiffs allege that the defendants violated the plaintiffs' constitutional rights by placing Elizabeth in temporary foster care in 1989. These alleged constitutional deprivations all stem from Elizabeth's placement with a local family in Fulton County rather than with the Whalens in Orange County. The Whalens allege that the defendants violated their First Amendment associational right to live with Elizabeth, their Fourteenth Amendment substantive and procedural due process rights in being able to adopt and live with Elizabeth, and their constitutional right to access the courts. Because of his biological link to his sister, plaintiff Michael Whalen's claims rest on a different legal basis than those of his parents. The Court, therefore, will address his claims separately.

## B. George and Elizabeth Whalen

### *First Amendment Claim*

Plaintiffs, George and Elizabeth Whalen, allege that the defendants deprived them of their First Amendment right to associate with Elizabeth. Plaintiffs allege this right exists due to their expectancy of becoming the foster or adoptive parents of Elizabeth based on their adoption of Elizabeth's biological brother. Plaintiffs argue that this right falls within the purview of the First Amendment based on the Supreme Court decisions in such cases as *Roberts v. United States Jaycees* and *Moore v. East Cleveland*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (respectively).

In *Roberts*, the Court stated that certain intimate types of relationships foster constitutional protection such as "the creation and sustenance of a family [and] marriage," *Id.* at 619, 104 S.Ct. at 3250, *citing Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Carey v. Population Servs. International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Smith v. Org. of Foster Families for Equality and Reform, et. al.*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) ("*Smith v. OFFER*"); and *Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The Court observed that family relationships implicate a protected associational right because, by their nature, they "involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts*, 468 U.S. at 620, 104 S.Ct. at 3250.

In *Moore*, four justices found that a "single family" zoning ordinance with a restrictive definition of family, that excluded extended-family living arrangements, implicated constitutional substantive due process rights. 431 U.S. at 503–05, 97 S.Ct. at 1937–39. The Court found that in many cases uncles, aunts, and grandparents share the same bonds, duties, and responsibilities implicit in what the nation traditionally considers as "family," and therefore should share the same constitutional protection. *Id.* at 505, 97 S.Ct. at 1938–39. Even though the Court in *Moore* did not implicate the First Amendment, *Moore* and *Roberts* both articulated the fundamental constitutional right of "families" to remain together.

The facts of the present case indicate that George and Elizabeth Whalen have no family-like relationship with Elizabeth. They have no biological link with the child, nor were they the adoptive parents or even the foster parents of Elizabeth. The Whalens share no community of thoughts, experiences, and beliefs with Elizabeth; in fact, they have never met her. The Whalens' expectation of adopting Elizabeth is the only link between them and Elizabeth. This expectancy falls far short of the type of protected relationship contemplated in *Roberts* or *Moore*. This Court cannot, therefore, find that George and Elizabeth Whalen have any constitutionally protected right of association with Elizabeth.

Plaintiffs next argue that George and Elizabeth Whalen's associational rights derive from the right of their son Michael. They maintain that because Michael is the biological sibling of Elizabeth Waite, and they are the adoptive parents of Michael, any associational right Michael may have with respect to his biological sister can somehow be ascribed to his adoptive parents. The plaintiffs cite no authority for such a proposition and this Court finds none to support boot-strapping constitutional rights in this manner. Furthermore, adoption is a legally created relationship between the adoptee and the adopting parents and, as such, it creates no rights for the adopting parents as to the biological kin of the adoptee. *See* N.Y.Dom. Rel.Law § 117 (McKinney 1988). Thus, George and Elizabeth Whalen have failed to establish a valid First Amendment claim under § 1983 as a matter of law.

### Procedural and Substantive Due Process

In order for the defendants to have violated the plaintiffs' procedural due process rights, the plaintiffs must have been deprived of some recognized liberty interest. Plaintiffs allege that they have a clearly established liberty interest in living with or adopting Elizabeth. In support of this assertion the plaintiffs cite to the Supreme Court decision *Smith v. OFFER*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). *Smith*, they argue, requires the application of a three part test to determine whether a liberty interest is present in a non-biological relationship. They further argue that an application of that test clearly establishes a liberty interest held by George and Elizabeth Whalen to live with or adopt Elizabeth. Plaintiffs maintain that they, as the adoptive parents of Elizabeth's older brother Michael, have a "well defined expectation of becoming the parents of Elizabeth." Plaintiffs argue that this expectation creates a far more permanent relationship than foster or pre-adoptive parentage.

In *Smith*, the Supreme Court recognized that a liberty interest does exist in maintaining family relationships. 431 U.S. at 842, 97 S.Ct. at 2108. *Smith*, however, suggested only that long term foster parents *may* have a liberty interest in preserving their relationships with their foster children. *Id.* at 844, 97 S.Ct. at 2109–10. According to *Smith*, The basis of this liberty interest is the length and strength of the bond between the foster parents and children.[5] *Id.*

George and Elizabeth Whalen's reliance on *Smith* to support the existence of a "liberty interest" on the facts of this case is misplaced. The three factors which the plaintiffs cite to establish their liberty interest, are actually three distinctions which *differentiate* foster families from biological families.[6] *Id.* at 845–47, 97 S.Ct. at 2110–11. Thus, these factors can not be used to extend a liberty interest to the plaintiffs, who have neither a biological nor a foster relationship with Elizabeth. To the extent that the plaintiffs argue that their relationship with Elizabeth is stronger than a foster relationship, this Court disagrees. The Whalens have none of the established emotional attachments or intimacy discussed in *Smith* that triggered the possible liberty interest held by foster parents. *Id.* at 844, 97 S.Ct. at 2110. Thus, the plaintiffs fail to establish a procedural due process "liberty interest" as a matter of law.

George and Elizabeth Whalen's assertion of a violation of their substantive due

---

**5.** "No one would seriously dispute that a deeply loving and interdependent relationship between an adult and a child in his or her care may exist even in the absence of blood relationship. At least where a child has been placed in foster care as an infant, has never known his natural parents, and has remained continuously for several years in the care of the same foster parents, it is natural that the foster family should hold the same place in the emotional life of the foster child, and fulfill the same socializing functions, as a natural family." *Id.* at 844, 97 S.Ct. at 2109–10.

**6.** In fact, subsequent courts have relied on these three factors enumerated in *OFFER* to support their decision to find that a foster family does *not* have a constitutionally protected liberty interest in remaining with their foster children. *See Kyees v. County Dep't of Pub. Welfare*, 600 F.2d 693, 698 (7th Cir.1979) (per curiam); *Drummond v. Fulton County Dep't of Family and Children Servs.*, 563 F.2d 1200, 1206–07 (5th Cir. 1977) (en banc), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978).

process right to live with Elizabeth is likewise invalid. Substantive due process places limits on a state's right to interfere with a person's most basic decisions about family and parenthood, which has been held to include such areas as the use of contraception, the termination of pregnancy, the raising of children, living with family, and preserving bodily integrity. *See Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 849, 112 S.Ct. 2791, 2805–06, 120 L.Ed.2d 674 (1992); *Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823–24, 18 L.Ed.2d 1010 (1967); *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Meyer v. Nebraska,* 262 U.S. 390, 399–403, 43 S.Ct. 625, 626–28, 67 L.Ed. 1042 (1923); and *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 1036–37, 108 L.Ed.2d 178 (1990). As a general matter, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this unchartered area are scarce and open ended." *Albright v. Oliver,* 510 U.S. 266, 271–72, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (citation omitted). There is no case law establishing the existence of a substantive due process right in the adoptive parents of one child to adopt or live with that child's biological sibling.

The Whalens have failed to identify the source of their alleged substantive due process right, citing only to *Moore v. City of East Cleveland.* Plaintiffs appear to argue that the Supreme Court's extension of substantive due process rights to non-nuclear family members, as suggested in *Moore,* can logically be extended to cover the plaintiffs' relationship with Elizabeth. In *Moore* the Court recognized that cousins, aunts and grandparents living together as a family are entitled to the same constitutional protection as traditional family members living together. 431 U.S. at 503–05, 97 S.Ct. at 1937–39. As stated before, however, there is no relationship, family-like or otherwise, between George and Elizabeth Whalen and Elizabeth Waite to which *Moore* can be extended.

Plaintiffs George and Elizabeth Whalen have presented no authority to support the existence of this substantive due process right, and this Court declines to create a new right under the Constitution.

### Right of Access to the Courts

■ Plaintiffs allege that by intention, recklessness or deliberate indifference, defendants violated New York State law in such a way as to deny the plaintiffs meaningful access to the courts. They allege that the defendants violated several New York adoption regulations which, if read together, imply a duty to inform the adoptive parents of one child of the subsequent foster placement of that child's biological sibling. Plaintiffs argue that by failing to inform them when Elizabeth was placed in temporary foster care in 1989, the defendants denied the Whalens the ability to sue for custody of Elizabeth or obtain administrative relief.

The constitutional right of access to courts is violated where government officials obstruct legitimate efforts to seek judicial redress. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984). When government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively, an unconstitutional deprivation of a cause of action occurs. *Barrett v. United States,* 798 F.2d 565, 575 (2d Cir.1986). The Constitution, therefore, protects claims from arbitrary interference by governmental officials. *Id.*

■ With respect to the New York adoption regulations which the plaintiffs allege the defendants violated, none create any duty to the Whalens which could give rise to a cause of action. For example, plaintiffs allege a violation of 18 NYCRR 421.2, which states:

Minor siblings or half-siblings who are *freed for adoption* must be placed together in a prospective adoptive family home unless the social services district or the voluntary authorized agency with guardianship and custody determines that such placement would be detrimental to the best interests of one or more of the siblings.

N.Y.Comp.Codes R. & Regs. tit. 18, § 421.2 (1996) (emphasis added). This regulation does not create any obligation on the part of the defendants to provide the Whalens with any information.[7] Further, while Michael was adopted in 1989, Elizabeth was not freed for adoption until June of 1991.[8] Finally, the plaintiffs had ample opportunity to litigate their grievances in state court after Elizabeth was freed for adoption. In fact, the Whalens brought their custody petition in Fulton County Family Court the very month that Elizabeth was freed for adoption. Thus, George and Elizabeth Whalen's claim of deprivation of constitutional right of access to the courts is disingenuous and contrary to the facts, and is therefore denied.

### C. Michael Whalen

As stated, Michael Whalen's § 1983 claims must be addressed separately because his constitutional claims rest on a different factual basis than those of his adoptive parents. The source of Michael's § 1983 claims under First Amendment freedom of intimate association and Fourteenth Amendment procedural and substantive due process rights, is his biological relationship to his sister. While plaintiff acknowledges that state statutory violations cannot serve as the basis for a § 1983 claim, he argues that the violation of state regulations by the defendants constituted conduct which caused a deprivation of his constitutional right to associate with Elizabeth.[9] Michael argues that the defendants had an affirmative duty to place Elizabeth with him in 1989 or, in the alternative, mandate visitation.

This Court need not decide whether a constitutional right to associate exists in biological siblings who have never lived together, because even assuming, arguendo, that Michael does possess these rights,[10] he has not asserted any deprivation of these rights. Plaintiff has not proffered any evidence that the defendants deprived him of the right to visit Elizabeth. Visitation between Michael and Elizabeth took place up until January 1989, when Michael was initially placed for adoption with the Whalens. In November of 1991, visitation between Michael and Elizabeth was ordered by the Fulton County Family Court following the custody hearing concerning Elizabeth. Thus, the only period of time when visitation did not take place between the siblings was the period between January 1989 and November 1991. While it is undisputed that there was no visitation during that time period, there is no evidence that there was any request for visitation by Michael or his adopted parents, let alone that the defendants refused to allow such visits to take place. Plaintiffs' argument that defendants had a duty under New York law to mandate visitation is likewise unsupported.[11]

---

7. Likewise, the Court finds that the other regulations cited are similarly inapplicable to any duty owed to the Whalens to inform them of Elizabeth's temporary foster placement.

8. Elizabeth's biological mother surrendered parental rights in January of 1991. Elizabeth was freed for adoption in June of 1991 when her biological father surrendered his parental rights. Prior to that time she was placed in foster care with the intent of returning her to her biological parents.

9. The second prong of the § 1983 standard requires that the conduct alleged *deprive* the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Eagleston*, 41 F.3d at 876 (emphasis added).

10. The Supreme Court in *Roberts v. Jaycees* did use family relationships to describe what associations were protected by the First Amendment, however, only because they involved "deep attachments and commitments" to other members of the family. 468 U.S. at 620, 104 S.Ct. at 3250.

It is questionable whether Michael's relationship with Elizabeth is this kind of association given that they have never actually lived together.

As to whether Michael possesses a liberty interest in living with Elizabeth, in *Rivera v. Marcus* the Second Circuit recognized that biological siblings have a liberty interest in maintaining a family environment free from arbitrary state interference. 696 F.2d 1016, 1026 (1982). The Court, however, emphasized the fact that the state was seeking to "terminate a child's long-standing familial relationship." *Id.* No such long standing familial relationship exists in Michael and Elizabeth's case.

11. The regulations cited by the plaintiffs do not support their assertion. Plaintiffs cite 18 NYCRR 431.10(e) which states:

Authorized agencies are responsible for ensuring that diligent efforts are made to facilitate regular bi-weekly visitation or communication between minor siblings or half-siblings who have been placed apart, unless such contact would be contrary to the health, safety or wel-

Therefore, even if Michael does possess the Constitutional rights alleged, there is no evidence to suggest that there was a deprivation of those rights by the defendants, and so Michael's § 1983 claim must fail as a matter of law.

### Right of Access to the Courts

Again, assuming arguendo that Michael does possess a Constitutional right to associate with his biological sister, he was not prevented from enforcing his rights in court. Plaintiffs allege that defendants' failure to inform them of Elizabeth's temporary foster care placement in 1989 denied them the ability to sue for custody and visitation at that time. As stated, there was no basis for suing for custody in 1989 because Elizabeth was under the custody of her biological mother until 1991. With respect to visitation, if Michael does possess a constitutional right to visitation with his sister, that right existed regardless of whether Elizabeth was in foster care or not. Nothing in the defendants' conduct interfered with Michael's ability to enforce that right in court.

Therefore, without passing on the existence of substantive Constitutional rights of association between Michael and his sister, the plaintiff's § 1983 claims based on a denial of his right of access to the court fail because the plaintiff has failed to proffer any evidence or point to any conduct which amounts to a deprivation of the rights alleged.

### D. State Claims

Generally, district courts have the discretion to remand state law claims once all federal claims have been dismissed. 28 U.S.C. § 1367.[12] However, the Court may retain jurisdiction if, upon consideration of such factors as judicial economy, fairness to the parties, the delicacy of state law issues, and the policy of avoiding needless decisions of state law, the court finds it is appropriate to do so. *Falls Riverway Realty, Inc. v. City of Niagara Falls, New York*, 732 F.2d 38, 43 (2d Cir.1984), *citing United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Furthermore, "the likelihood of a prompt disposition [of a] long delayed litigation, and the legitimate interests and expectations of the parties in having a trial in federal court," should also be considered. *Id.*

Because the parties in this case have been litigating this matter in federal court for nearly four years, and the state issues presented do not present any complex or novel questions of state law, the Court chooses to rule on the summary judgment motions as to the state claims in the interests of judicial economy and fairness to the litigants.

### Fraud

As the basis of their fraud claim, plaintiffs allege that defendants intentionally deceived them about the foster care status of Elizabeth with the intent to prevent them from visiting Elizabeth. The elements of fraudulent misrepresentation in New York require that: (1) the defendant make a material false representation, (2) the defendant intend to defraud the plaintiff thereby, (3) the plaintiff reasonably rely on the representation, and (4) the plaintiff suffer damage as a result of such reliance. *Keywell Corp. v. Weinstein*, 33 F.3d 159, 163 (2d Cir.1994) (citations omitted). In addition to failing to proffer any evidence as to what the exact false representation made by the defendants was, there is

---

fare of one or more of the children, or unless lack of geographic proximity preclude visitation.

This regulation in no way required Fulton County DSS to place Elizabeth with Michael, nor does it mandate visitation. First, the title of this regulation is "Placement in foster family care of children who are siblings." This regulation on its face applies to siblings who have been placed in separate foster families. Michael was already in adoptive placement in Orange County when Elizabeth was removed from the custody of her mother. Thus, it is questionable whether this statute applies to Michael and Elizabeth's situation at all. Secondly, at best, this regulation

required the Fulton County DSS to "facilitate" visitation requests by the Whalens. The consideration of geographic proximity aside, there is no indication that the Whalens ever requested visitation for Michael during that period.

12. In fact, the Second Circuit has expressed a preference towards remanding the state claims when the federal claims have been dismissed prior to trial. *See Maric v. St. Agnes Hosp. Corp., et al.*, 65 F.3d 310, 314 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996).

not a single fact in the record which indicates that the defendants made any statements with the intent to defraud the plaintiffs. Therefore, as to the fraud claims there is no issue of material fact for a jury to decide and this Court grants summary judgment in favor of the defendants.

### Intentional/Negligent Interference with Plaintiff's Rights to Custody and Visitation

 Plaintiffs allege that defendants conspired to and did deliberately withhold information in order to deprive the plaintiffs of visitation and custody. The "unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort." *Kajtazi v. Kajtazi*, 488 F.Supp. 15, 18 (E.D.N.Y.1978). The plaintiff must have a legal right to custody in order to possess a cause of action for custodial interference. *Harley v. Druzba*, 148 Misc.2d 564, 560 N.Y.S.2d 959, 961 (Sup.Ct. Rensselaer County 1990) (dismissing a custodial interference cause of action because plaintiff did not have legal right of custody). Here, plaintiffs have no legal right to custody of Elizabeth. During the disputed time period of January 1989 to June 1991, Elizabeth was either in the custody of her biological mother, or in temporary care of Fulton County DSS. Because the plaintiffs had no underlying right to custody, they cannot, as a matter of law, maintain an action for interference with that custody.

With respect to visitation, plaintiffs George and Elizabeth Whalen never had a right of visitation with Elizabeth. Therefore, they cannot maintain a cause of action for interference with that right. With respect to plaintiff Michael Whalen, while he may have an underlying right to visitation, plaintiffs have not proffered any evidence that defendants interfered with that right either intentionally or negligently. As discussed above, the plaintiffs' assertion that the defendants' violated various New York adoption regulations lacks merit. At best, the only applicable statutory duty with respect to Fulton County DSS is to "facilitate" visitation, unless it is not in the best interests of the child, or if geographic proximity precludes it. *See* N.Y.Comp.Codes R. & Regs. tit. 18

§ 431.10(e) (1996). The facts offered and alleged by the Plaintiffs do not support a violation of this statutory duty. Therefore, the Court finds that all of plaintiffs' custodial and visitation interference claims must fail as a matter of law.

### Intentional Infliction of Emotional Distress

 Plaintiffs' eighth cause of action is for intentional infliction of emotional distress. The elements of this action in New York are: (1) conduct which goes beyond all possible bounds of decency, (2) intention to cause distress, or knowledge that defendant's conduct would cause distress, (3) severe emotional distress, and (4) a causal link between the defendant's conduct and the plaintiff's distress. *Campbell v. Grayline Air Shuttle, Inc.*, 930 F.Supp. 794, 803–04 (E.D.N.Y.1996). To be actionable, the conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" *Id. citing Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985).

 The Court holds as a matter of law that the plaintiffs' claim for intentional infliction of emotional distress falls well short of this stringent standard. Even if the defendants deliberately withheld information from the Whalens concerning Elizabeth's foster care placement, such action does not constitute conduct that is beyond all possible bounds of decency. There is nothing in the record to suggest that the defendants did anything that was not in their view, in the best interests of Elizabeth. Therefore, the Court grants summary judgment for the defendants on the claim of intentional infliction of emotional distress.

### Negligent Infliction of Emotional Distress

 Plaintiff's ninth and final claim is for negligent infliction of emotional distress. Although physical injury or impact is no longer required in New York to maintain a cause of action for negligent infliction of emotional distress, "plaintiff must nevertheless demonstrate that he was put in fear for his personal safety as a result of some traumatic event." *Wilson v. Consolidated Rail Corporation,*

810 F.Supp. 411, 416 (N.D.N.Y.1993) (citations omitted). The Plaintiffs neither allege nor offer any evidence of actual physical injury or apprehension of physical harm from defendants' alleged conduct. The Court, therefore, grants the defendant's motion for summary judgment as a matter of law as to the plaintiffs' claim for negligent infliction of emotional distress.

### Conclusion

In essence, the Whalen's Constitutional claims originate from their theory that they were entitled to custody or adoption of Elizabeth Waite. While the Court empathizes with the Whalens in that their hope to adopt their son's biological sister was not and never will be realized, not all adverse decisions are the result of unconstitutional conduct. George and Elizabeth Whalen never had a substantive constitutional right to live with or visit Elizabeth Waite. While, arguably, Michael Whalen may have a constitutional right to visitation with his sister, that right was never denied to him by the defendants, nor is it being denied now. As such, the plaintiffs' § 1983 claims alleging unconstitutional deprivation must fail.

After carefully reviewing the parties' submissions and the applicable law, the Court finds that there are no issues of material fact and that the defendants are entitled to judgment as a matter of law. Therefore, it is hereby

ORDERED that defendants' motions for summary judgment are GRANTED and the complaint is dismissed in its entirety.

**IT IS SO ORDERED.**