126 F.3d 400
 George T. WHALEN and Elizabeth M. Whalen, Individually and
as Parents and Legal Guardians of Michael W.
Whalen, an Infant, Plaintiffs-Appellants,
v.
The COUNTY OF FULTON; The Fulton County Department of
Social Services; Jeanne D. Johannes, Individually and in
Her Official Capacity; John Rogers, Individually and in His
Official Capacity; Malinda Argotsinger, Individually and in
Her Official Capacity; Karen Glover, Individually and in
Her Official Capacity; Judith Vanheusen, Individually and
in Her Official Capacity; The County of Montgomery; The
Montgomery County Department of Social Services; Robert L.
Reidy, Individually and in His Official Capacity; Molly
Johnson, Individually and in Her Official Capacity; and
Cynthia Hallam, Individually and in Her Official Capacity,
Defendants-Appellees.
 No. 1746, Docket 96-9417.
 United States Court of Appeals,
Second Circuit.
 Argued May 19, 1997.
Decided Oct. 2, 1997.
 
 Brendan C. O'Shea, Gleason, Dunn, Walsh & O'Shea, Albany, NY, of counsel, for Plaintiffs-Appellants.
 Arete K. Sprio, Maynard, O'Connor, Smith, Catalinotto & D'Agostino, LLP, Albany, NY, of counsel, for Defendants-Appellees the County of Montgomery; Montgomery County Department of Social Services, Robert L. Reidy, Molly Johnson, and Cynthia Hallam.
 Carrie McLoughlin-Noll, Horigan, Horigan, Pennock and Lombardo, P.C., Amsterdam, NY, of counsel, for Defendants-Appellees the Fulton Defendants.
 Before: WALKER, McLAUGHLIN, PARKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Adoptive parents George and Elizabeth Whalen (the "Whalens"), and their adopted child Michael Whalen ("Michael") (collectively "plaintiffs") appeal from an order of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., District Judge ) granting the motion of county departments of social services and several individual county officials (collectively "defendants"), for summary judgment and dismissing plaintiffs' second amended complaint. In their second amended complaint, plaintiffs allege that defendants violated their First and Fourteenth Amendment rights by failing to facilitate visitation and contact between Michael and his biological sibling during a period when both children were in the defendants' custody.
 
 
 2
 We affirm.
 
 BACKGROUND
 
 3
 The facts pertaining to this appeal are detailed in the district court's opinion granting defendants' motion for summary judgment, Whalen v. County of Fulton, 941 F.Supp. 290, 292-93 (N.D.N.Y.1996) ("Whalen II "), and in our prior opinion, dismissing for lack of jurisdiction defendants' interlocutory appeal of the district court's denial of defendants' motion to dismiss on the grounds of qualified immunity, Whalen v. County of Fulton, 19 F.3d 828, 829-30 (2d Cir.1994) ("Whalen I "), familiarity with which is assumed.
 
 
 4
 The infant plaintiff, Michael, was born in Montgomery County, New York, on January 27, 1986. In September 1986, Michael's biological parents voluntarily placed him in the custody of the defendant Montgomery County Department of Social Services (the "MCDSS"), and Michael was placed in foster care. Shortly thereafter, Michael's biological parents moved to Fulton County, New York.
 
 
 5
 On August 1, 1987, Michael's biological sister, Elizabeth, was born in Fulton County, and she lived with her biological parents. From August 1987 to December 1988, Elizabeth and Michael visited each other on approximately twenty-two occasions. In January 1989, Michael's biological parents voluntarily surrendered him for adoption, and visitation between Michael and Elizabeth ceased.
 
 
 6
 In March 1989, plaintiffs, the Whalens, were informed by their Orange County caseworker that Michael was in foster care and available for possible adoption through the MCDSS. In April 1989, the Whalens were advised that Michael had a sister and were asked whether they would be interested in adopting Elizabeth also. The Whalens indicated their willingness to do so; no further discussions on the subject occurred. During the spring and summer of 1989, the Whalens contacted the MCDSS several times regarding Elizabeth's availability and were advised that she was still living with her biological parents and was not available for adoption.
 
 
 7
 In June 1989, Michael was placed for pre-adoption in the Whalens' home. In October 1989, Elizabeth was removed from the home of her biological parents by defendant Fulton County Department of Social Services (the "FCDSS") and placed in foster care in the Fulton County home of Robert and Aurelia Waites (the "Waites"). At that time, defendant FCDSS social worker John Rogers informed defendant MCDSS social worker Cynthia Hallam that the FCDSS had taken Elizabeth into custody and asked her whether the MCDSS would provide a foster home for Elizabeth. The MCDSS declined custody over Elizabeth pending a child protective determination by the FCDSS, but Hallam requested that the FCDSS continue to advise the MCDSS of Elizabeth's status. In addition, Hallam told Rogers that the Whalens had indicated an interest in adopting Elizabeth if she were freed for adoption.
 
 
 8
 Defendant MCDSS social worker Molly Johnson also spoke with Rogers. Johnson indicated that the permanency goal for Elizabeth was to return her to her biological mother and that this goal would be jeopardized by Elizabeth's placement in a Montgomery County home, rather than in a Fulton County home. Johnson also indicated that Michael's long-term placement and adoption might be jeopardized by Elizabeth's temporary placement with the Whalens. Defendant FCDSS social worker Malinda Argotsinger explained that the FCDSS did not wish to place Elizabeth with Michael because the goal for Elizabeth was to return to her biological mother, whereas the goal for Michael was to finalize adoption by the Whalens. Argotsinger stated that the FCDSS made a determination that it was not in the children's best interest to have visitation with each other because their goals were contradictory and because their biological mother did not want any further contact with Michael. The record appears to contain no formal documentation of this determination.
 
 
 9
 Between October 1989 and November 1990, the FCDSS caseworkers worked with Elizabeth's biological mother in the expectation that Elizabeth would ultimately be returned to her mother's care and custody.
 
 
 10
 In June 1990, the Whalens adopted Michael. Shortly thereafter, the Whalens' Orange County caseworker wrote to Johnson on the Whalens' behalf restating their continued interest in adopting Elizabeth. The Whalens received no response and were not informed that Elizabeth had been taken into the custody of the FCDSS.
 
 
 11
 In October 1990, a Permanent Neglect Petition was filed by Fulton County on behalf of Elizabeth, and in January 1991, Elizabeth's biological mother surrendered her parental rights. On January 26, 1991, the Whalens received an anonymous phone call informing them that Elizabeth had been placed in foster care with a couple who planned to adopt her. On June 13, 1991, Elizabeth's natural father admitted neglect, freeing Elizabeth for adoption. The FCDSS did not inform the Whalens of the surrender.
 
 
 12
 In June 1991, the Whalens filed a petition in Fulton County Family Court requesting custody and visitation with Elizabeth. In September 1991, the Waites filed a petition for custody of Elizabeth. In November 1991, the Fulton County Family Court conducted a custody hearing, after which it granted temporary custody of Elizabeth to the Waites, and awarded visitation rights to Michael.
 
 
 13
 On April 8, 1992, the Fulton County Family Court granted permanent custody of Elizabeth to the Waites, finding it to be in Elizabeth's best interests in part because she had developed a psychological bond with the Waites. The Waites thereafter filed an adoption petition which was granted in May 1992. On June 17, 1993, the New York State Appellate Division affirmed. See George L v. Commissioner of Fulton County Dep't of Soc. Servs., 194 A.D.2d 955, 599 N.Y.S.2d 319, 321 (N.Y.App.Div.1993).
 
 
 14
 In October 1992, the Whalens and Michael initiated this action pursuant to 42 U.S.C. § 1983 against the County of Fulton, New York, the FCDSS, individual FCDSS social workers Jeanne Johannes, John Rogers, Malinda Argotsinger, Karen Glover, and Judith VanHeusen (the "Fulton County defendants"); the County of Montgomery, New York; the MCDSS; and individual MCDSS social workers Robert Reidy, Molly Johnson, and Cynthia Hallam (the "Montgomery County defendants"), alleging that the acts and omissions of the Montgomery and Fulton County defendants--that is, the defendants' failure to implement contact or visitation between Michael and Elizabeth and their failure to place Elizabeth with the Whalens--deprived them of their (1) First Amendment right to freedom of intimate association; (2) Fourteenth Amendment substantive and procedural due process rights; and (3) First Amendment right of access to the courts. In addition, the plaintiffs alleged five pendant state law claims, including: (1) fraud; (2) intentional interference with custody and visitation; (3) negligent interference with custody and visitation; (4) intentional infliction of emotional harm; and (5) negligent infliction of emotional harm.
 
 
 15
 In January 1993, the defendants moved for summary judgment on the ground that the individual defendants were entitled to qualified immunity. On March 25, 1993, the district court denied the motion without prejudice to its renewal after further discovery and defendants appealed. On March 29, 1994, a panel of this court dismissed the appeal for lack of subject matter jurisdiction, Whalen I, 19 F.3d at 830-31, with Walker, J., dissenting, id. at 831-33.
 
 
 16
 In May 1996, the defendants again moved for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the grounds that the individual defendants were entitled to qualified immunity and that the plaintiffs had failed to state a claim upon which relief may be granted. On September 26, 1996, the district court granted defendants' motion and dismissed plaintiffs' complaint in its entirety. Whalen II, 941 F.Supp. at 300. On October 25, 1996, plaintiffs filed a notice of appeal, limited to the following: Michael appeals the dismissal of his (1) First Amendment right of freedom of intimate association claim; (2) Fourteenth Amendment substantive and procedural due process claims; and (3) state law (a) intentional interference with custody and visitation claim; (b) negligent interference with custody and visitation claim; and (c) negligent infliction of emotional distress claim as against the Montgomery County defendants. The Whalens and Michael appeal the dismissal of (1) their First Amendment right of access to the courts claim; and (2) the dismissal of their state common law fraud claim against the Montgomery County defendants.
 
 DISCUSSION
 
 17
 We review a district court order granting summary judgment de novo. See Johnson v. United States, 123 F.3d 700, 702 (2d Cir.1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir.1993). "In assessing the record, all ambiguities and reasonable inferences are viewed in a light most favorable to the nonmoving party." Vona v. County of Niagara, 119 F.3d 201, 206 (2d Cir.1997).
 
 I. Qualified Immunity
 
 18
 The individual defendants argue that they are immune from liability under the doctrine of qualified immunity. That doctrine shields public officials from liability "insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known,' Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights,' Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir.1994)." Simms v. Village of Albion, 115 F.3d 1098, 1106 (2d Cir.1997); see Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991).
 
 
 19
 The Whalens' cause of action for interference with their right of access to the courts is premised on the claimed liberty interest in adoptive parents to adopt or live with the biological sibling of their adoptive child. We find no case that would lead us to conclude that such a right exists, much less that it is "clearly established." Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 844-47, 97 S.Ct. 2094, 2109-11, 53 L.Ed.2d 14 (1977), which noted that foster families have, at best, a limited liberty interest in remaining together, is not to the contrary. That case does not create a "clearly established" right to form a relationship with the younger sibling of an adopted child when the adoptive parents have never lived with the younger child. See Whalen I, 19 F.3d at 831-32 (Walker, J., dissenting).
 
 
 20
 Citing to Rivera v. Marcus, 696 F.2d 1016 (2d Cir.1982), and Aristotle P. v. Johnson, 721 F.Supp. 1002 (N.D.Ill.1989), plaintiffs argue that Michael has a clearly established liberty interest in associating with his biological sister. Appellants' Reply Brief 6-9. In Rivera, this court held that the State of Connecticut violated the due process rights of an adult woman who, over a period of six years, had been both the custodial relative and foster parent to her two half-siblings when it removed the children from her home. 696 F.2d at 1024-26. In Johnson, the district court refused to dismiss the plaintiffs' claims alleging that defendants' practice of placing siblings in separate foster homes and denying them the opportunity to visit one another violated their rights under the First and Fourteenth Amendments. 721 F.Supp. at 1005-10.
 
 
 21
 Both cases are distinguishable. In this case, Michael was removed from the home of his biological parents before Elizabeth's birth. Michael and Elizabeth never lived together, and while Michael and Elizabeth visited with each other on approximately twenty-two occassions, they did not have the type of ongoing relationship present in Rivera and Johnson. "Neither Rivera nor Johnson established a generalized liberty interest of an adopted child in associating with his biological siblings; much less did they create a particularized interest in an adopted child to have his younger biological sister placed in his adoptive home." Whalen I, 19 F.3d at 832 (Walker, J., dissenting). Such a right, even if it could be said to exist today, was not clearly established at the time of defendants' allegedly violative conduct. Because Michael's claims that he was denied both access to the courts and procedural due process are premised upon a recognition of a liberty interest in adopting or living with Elizabeth, our conclusion that no such liberty interest exists disposes of those claims as well.
 
 
 22
 We therefore agree with the individual defendants that the rights sought to be protected were not clearly established and that the defendants are entitled to qualified immunity.
 
 II. 42 U.S.C. § 1983 Claims
 
 23
 Our qualified immunity analysis disposes of plaintiffs' claims against only the individual defendants. See Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). We now turn to the claims asserted against the municipal defendants. To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir.1994).
 
 
 24
 A. Michael's Freedom of Association and Substantive and Procedural Due Process Causes of Action
 
 
 25
 Only Michael appeals from the dismissal of his freedom of association, substantive due process, and procedural due process causes of action. These causes of action are grounded in a claim that an adopted child has a constitutional right to visit with and be placed with his biological sibling. We agree with the district court that, even if such constitutional rights were to exist, Michael did not allege facts sufficient to state any deprivation of them. See Whalen II, 941 F.Supp. at 297.
 
 
 26
 From August 1987 to December 1988, while Michael was in the custody of the MCDSS and Elizabeth was still living with her biological parents, Michael and Elizabeth visited with each other approximately twenty-two times. In January 1989, Michael's biological parents voluntarily surrendered him for adoption, and visitation between Michael and Elizabeth ceased. In June 1989, Michael was placed for pre-adoption with the Whalens in Orange County. In October 1989, Elizabeth was removed from the home of her biological parents and placed in foster care with the Waites in Fulton County. In June 1990, the Whalens adopted Michael. Thus, the only period during which the defendants had custody over both Michael and Elizabeth was between October 1989 and June 1990, when it is undisputed that no efforts were made to facilitate contact between the siblings.
 
 
 27
 Plaintiffs claim that the defendants were required by agency regulations, 18 N.Y.C.R.R. § 431.10, to make efforts to facilitate contact and visitation during this period and therefore interfered with Michael's constitutional right to associate with Elizabeth. That regulation provides that if "minor siblings ... are placed apart in foster family boarding homes ... on an emergency basis, they must be reunited within 30 days unless the social services commissioner or a designated representative determines it is contrary to the best interests of one or more of the siblings to be placed together." 18 N.Y.C.R.R. § 431.10(c). It further states:
 
 
 28
 Authorized agencies are responsible for ensuring that diligent efforts are made to facilite regular bi-weekly visitation or communication between minor siblings ... who have been placed apart, unless such contact would be contrary to the health, safety or welfare of one or more of the children, or unless lack of geographic proximity precludes visitation.
 
 
 29
 18 N.Y.C.R.R. § 431.10(e). Thus, visitation and contact between siblings who are both under the custody of the county agencies should be facilitated only to the extent that such visitation and contact is in the best interests of the children. The regulations do not mandate that the defendants facilitate visitation and contact between Elizabeth and Michael under all circumstances. In this case, the record demonstrates that officials at the FCDSS determined that during the period when Elizabeth was removed from the home of her biological parents until the time that their parental rights were terminated it would not be in the children's best interests to continue visitation, because Michael's permanency goal was placement with the Whalens and Elizabeth's permanency goal was reunification with her biological mother. Therefore, we agree with the district court that the regulations imposed no duty on the agencies to provide information to the Whalens concerning Elizabeth's placement in foster care in October 1989.
 
 
 30
 The plaintiffs assert that the regulations allow the defendants to forego facilitating visitation and contact only if defendants document their efforts. While the regulations do require documentation and there is a question of fact as to whether such documentation occurred in this case, the failure to document does not give rise to a cause of action on Michael's behalf based on a constitutional violation. See van Emrik v. Chemung County Dep't of Soc. Servs., 911 F.2d 863, 867 (2d Cir.1990) (fact that agency official's conduct--that is, ordering x-rays to gather evidence of child abuse when x-ray was not medically necessary--"exceeded the scope of the pertinent state statute does not necessarily mean that a constitutional right was impaired"); cf. Davis v. Scherer, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984) ("Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation--of federal or of state law--unless that statute or regulation provides the basis for the cause of action sued upon.").
 
 
 31
 The Whalens were informed that Michael had a biological sibling in April 1989. Although the Whalens requested information regarding Elizabeth's status and availability for adoption, there was no evidence indicating that the Whalens requested visitation or that the defendants in any way prevented the Whalens from making such a request.
 
 
 32
 We affirm the dismissal of Michael's freedom of association, substantive due process, and procedural due process claims on the ground that Michael has failed to allege that his rights, if any, were violated by the defendants' acts or omissions.
 
 B. Right to Access the Courts
 
 33
 All plaintiffs appeal from the dismissal of their causes of action for interference with their right of access to the courts. The constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress. See Barrett v. United States, 798 F.2d 565, 575 (2d Cir.1986) ("[T]he Constitution protects causes of action from arbitrary interference" by government officials.); see, e.g., Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir.1984) (police conspiracy to cover up facts of victim's fatal shooting violated right of access). "[W]hen government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively," an unconstitutional deprivation of a cause of action occurs. Barrett, 798 F.2d at 575.
 
 
 34
 Plaintiffs assert that defendants, by concealing the fact that Elizabeth had been placed into foster care in October 1989, prevented them from bringing, (1) pursuant to N.Y. Soc. Serv. §§ 22, 372-b(1)(a),[1] and 18 N.Y.C.R.R. § 421.18(h),[2] a request for an administrative hearing to compel defendants to promote contact and visitation between Michael and Elizabeth as allegedly required by state regulations, and (2) a timely custody action for Elizabeth. Appellants' Opening Brief 32. The Whalens claim that they would have discovered as early as October 1989 that Elizabeth had been removed from the home of her biological parents and could have petitioned for visitation before June 1991, when they actually filed their petition for visitation, if the defendants had complied with the appropriate regulations. As mentioned earlier, these regulations require the authorized agencies to facilitate contact and visitation between Elizabeth and Michael unless they document the reasons why such contact would not be in the best interest of either child. The Whalens acknowledge that the earliest that they could have petitioned for custody of Elizabeth was in June 1991, when Elizabeth's biological parents surrendered their parental rights, and that they did in fact petition for custody in June; however, they contend that their right to petition the courts for custody was effectively undermined by the defendants' failure to disclose that from October 1989 Elizabeth was in the custody of the FCDSS. They claim that if they had been told this, they would have requested visitation with Elizabeth earlier. This, in turn, would have prevented the development of the psychological bond between Elizabeth and the Waites that was ultimately the basis for the Fulton County Family Court's decision to award permanent custody to the Waites. The plaintiffs cite Ryland v. Shapiro, 708 F.2d 967, 974-75 (5th Cir.1983), which held that state officials who intentionally delayed a murder investigation may be liable to the victim's family for depriving them of the opportunity to bring a timely wrongful death action against the murderer.
 
 
 35
 The district court rejected plaintiffs' claims, finding that the state regulations imposed no duty on defendants to provide the Whalens or Michael with information regarding Elizabeth's placement in foster care in October 1989. See Whalen II, 941 F.Supp. at 296-97. We agree.
 
 
 36
 Plaintiffs point to several state regulations pertaining to provision of adoptive services, none of which require that the Whalens be informed that Elizabeth was taken into the custody of the FCDSS in October 1989. For example, neither 18 N.Y.C.R.R. § 431.10(c)[3] nor 18 N.Y.C.R.R. § 428.6(b)(6)(v)[4] requires, much less "unambiguously" requires, Appellants' Opening Brief 33, defendants to inform the Whalens of Elizabeth's October 1989 placement in foster care.
 
 
 37
 Plaintiffs' claim that the FCDSS was under a continuing duty to facilitate contact, visitation and/or placement between Michael and Elizabeth under other provisions of 18 N.Y.C.R.R. § 431.10 is equally without merit. Section 431.10 provides, in relevant part:
 
 
 38
 (d) Foster parents must be informed if any child placed with them has siblings ... and if so, the location of the siblings....
 
 
 39
 (e) Authorized agencies are responsible for ensuring that diligent efforts are made to facilite regular bi-weekly visitation or communication between minor siblings ... who have been placed apart, unless such contact would be contrary to the health, safety or welfare of one or more of the children, or unless lack of geographic proximity precludes visitation.
 
 
 40
 18 N.Y.C.R.R. § 431.10. The Whalens admit that in April 1989, before Michael was placed with them, they were informed of Elizabeth's existence and that she remained in the custody of her biological parents. Nothing in 18 N.Y.C.R.R. § 431.10 or any other agency regulation cited by plaintiffs imposes on the agencies a continuing duty to inform the Whalens of Elizabeth's subsequent placement in foster care; nor do the Whalens contend that it does. Instead, they claim that the defendants violated 18 N.Y.C.R.R. § 431.10(e), requiring facilitation of contact and visitation between the children. However, as we have explained earlier, the regulation's requirements are subject to the best interests of the children. Nothing in Doe v. New York City Department of Social Services, 649 F.2d 134, 146-47 (2d Cir.1981), which held that an agency can be liable for its continued failure to adequately supervise placement of a foster child where state regulation mandated that the agency report suspicions of child abuse, compels a different result. The Whalens failed to produce any evidence that the defendants interfered with their right of access to the courts. There being no duty to facilitate visits and contacts between Michael and Elizabeth when the defendants determined it was not in the children's best interest, the Whalens have failed to state a claim based on any alleged "cover up" designed to delay or forestall efforts to visit.
 
 
 41
 Moreover, the defendants did not prevent the Whalens from bringing a custody petition for Elizabeth, who was not freed for adoption until June 1991, the same month in which the Whalens in fact brought a custody petition. Thus, in fact, the Whalens were not deprived of their constitutional right of access to the courts and their claim was properly dismissed.
 
 
 42
 We also agree with the district court that even if Michael had a constitutional right to visitation with Elizabeth, "that right existed whether Elizabeth was in foster care or not. Nothing in the defendants' conduct interfered with Michael's ability to enforce that right in court." Whalen II, 941 F.Supp. at 298.
 
 III. State Claims
 
 43
 For substantially the reasons stated in the district court opinion, we affirm the dismissal of the state law claims.
 
 CONCLUSION
 
 44
 For the foregoing reasons, we affirm the district court order granting defendants' motion for summary judgment and dismissing plaintiffs' complaint.
 
 
 
 [1]
 N.Y. Soc. Serv. § 372-b(1)(a) provides, in relevant part, that "[a] prospective adoptive parent shall have a right to a fair hearing ... concerning the failure of a social services official to provide adoption services...."
 
 
 [2]
 18 N.Y.C.R.R. § 421.18(h) requires each social services agency to "notify the prospective adoptive parent(s) in writing of his or her right to a fair hearing when a social services official fails to provide adoption services...."
 
 
 [3]
 18 N.Y.C.R.R. § 431.10(c) requires that siblings that are placed apart on an emergency basis be "reunited within 30 days" unless the agency "determines that it is contrary to the best interests of one or more of the siblings to be placed together."
 
 
 [4]
 18 N.Y.C.R.R. § 428.6(b)(6)(v) provides that "[t]he initial assessment and service plan shall include ... for children in foster care ... an estimate of the anticipated duration of placement...."